## THE SAMMY AND THE R. W. BURKE.[1]

MacMaster *et al. v.* THE SAMMY AND THE R. W. BURKE.

(*District Court, S. D. New York.* May 31, 1888.)

COLLISION—STEAM-TUGS—CROSSING—BAD LOOKOUT—DELAY IN BACKING.

The steam-tug S., with a railroad float along-side, had rounded the Battery into the East river some 300 yards from the shore. The tug B., with libelant's bark upon her starboard side, was at the time proceeding from Buttermilk channel towards the New York shore, and was on the starboard hand of the S. The latter, when off Hamilton ferry, N. Y., and some 400 yards from the B., gave two whistles, indicating an intention to pass ahead of the B. Getting no answer she repeated her signal, which the B. answered with two; and afterwards, and when, as alleged, the collision was unavoidable, the S. stopped and reversed. The B. contended that she stopped and backed as soon as the two whistles of the S. were heard. *Held,* that both tugs were answerable for libelant's damage,—the S. because she was bound to keep out of the way of the B., and took the risk of an attempt to pass ahead of her; the B. for her neglect in not observing the signal of the S. in time either to have refused assent to the latter's maneuver, or, on assenting to it, to have taken measures in time to allow the S. to pass in safety ahead of her.

In Admiralty.
*Wing, Shoudy & Putnam,* for libelants.
*Edward D. McCarthy,* for the Sammy
*Biddle & Ward,* for the R. W. Burke.

BROWN, J. At about 2 o'clock in the afternoon of February 8, 1888, the libelant's bark Mary MacMaster, lashed upon the starboard side of the tug R. W. Burke, while proceeding from Buttermilk channel to pier 6, North river, came in collision with a railroad float along-side the steam-tug Sammy, and received damages, for which this libel was filed. The collision was probably not more than 300 feet off the end of pier 6. The tide was slack, running a little flood along the shore. The bark struck the float nearly amid-ships, and about at right angles. Each was previously going at the rate of about three or four knots. The Sammy and her tow had come from the Erie Railroad dock at Jersey City, bound up the East river. They rounded the Battery some 300 or 400 yards off; and, when off Hamilton ferry, N. Y., and some 300 yards distant from it, seeing the Burke moving up and crossing the East river towards pier 6, and about 400 yards distant, gave her a signal of two whistles, indicating that she would pass ahead of the Burke and between her and the New York shore. Getting no answer, the Sammy, about half a minute afterwards, when between piers 2 and 3, and from 700 to 900 feet distant from the bark, repeated her signal of two blasts. She starboarded her wheel so as to approach somewhat nearer to the shore, and continued on until the float, which was some 225 feet long, reached the line of the Burke's course, and was within 50 or 100 feet of her, when her engines

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

were reversed, because, as her witnesses allege, the collision was then unavoidable, and reversing was necessary to make the blow as light as possible. She charges that the collision was the sole fault of the tug Burke, in that the latter did not stop and back in time, as she should have done after the assenting whistles, by which it was agreed that the Sammy and her float should pass across the bow of the Burke. The witnesses for the Burke contend that, as soon as the answering signal of two whistles was given, the Burke did stop and reverse her engines full speed, and put her wheel hard a-starboard. If that was done, that was doubtless all that was incumbent upon her, and all that she could do to avoid the collision.

I find it impossible to accept as accurate the testimony of the Burke's witnesses that she reversed at once on answering the Sammy's signal. The Burke was light. The engineer testified that they could stop their motion in the water within 125 feet. Without accepting this statement as perfectly accurate, I cannot doubt upon the testimony that she could be stopped still in the water within a space of 500 feet when crossing the river at no greater speed than three or four knots; and their distance apart, when the signals were exchanged, I cannot find upon the testimony to be nearly so small as 500 feet. This circumstance, however, is not alone sufficient to charge the Burke with fault. She was on the starboard hand of the Sammy, and the latter was therefore bound to keep out of her way. By the ordinary rule the Sammy should have gone to the right and astern of the Burke, with a signal of one whistle. If, for good reasons, the Sammy chose to perform her duty of keeping out of the way by going ahead of the Burke, instead of astern of her, her statutory duty to keep out of the way of the Burke still remained unchanged; and the Burke, in assenting to the Sammy's design to go ahead of her, did not guaranty its success; nor was she bound, in consequence of that assent, to stop and back at once, unless risk of collision was apparent; and if passing in that manner would involve risk of collision at the moment signals were exchanged, both would be in fault for giving and assenting to signals for that mode of passing, when there was no good reason for adopting that irregular mode, and when, as in this case, the situation admitted of the Sammy's going astern of the Burke by simply slowing for a few seconds until the Burke had passed ahead. The evidence does not show any sufficient reason for the Sammy's departing from the ordinary course of going to the right and astern of the Burke by slowing, which she might have done without porting her wheel, if the Saxe and her tow, which were on her starboard quarter, impeded her porting. It does not appear, however, that the Saxe and her tow had any difficulty in keeping away from the Burke, or that she would not have followed the Sammy's porting, so far as necessary, had the Sammy ported. It was perfectly safe, easy, and simple, however, to stop for a few seconds; while going ahead and to the left was exceptional, and obviously more or less dangerous. The latter course was therefore at the risk of the Sammy, and she must be held in fault for departing, without necessity, from the ordinary rule, and for attempting a hazardous maneuver, which she could not perform

without imposing on the Burke duties that she had no right to impose. *The Greenpoint*, 31 Fed. Rep. 231; *The Susquehanna*, *ante*, 320.

The Burke I must also hold in fault, first, for not keeping a proper lookout, and for not giving proper attention to the Sammy until within 300 yards of her. She was in sight long before. Had she been noticed in time, her first signal could not have been unperceived. The course of the Burke across the river, and athwart the courses of vessels going up and down, made it specially obligatory upon her to observe them, and to give them timely signals. Considering the numerous vessels passing about the Battery, although there may be practical difficulties in a literal observance of the inspector's rules, which require an exchange of signals when vessels approach within half a mile of each other, the neglect of the Burke to observe the Sammy's signal until she was so near as in this case was inexcusable. Had the Sammy's movements been sooner noticed, there would have been time, probably, for better judgment as to her rate of speed, and the probability of her passing ahead of the Burke safely; so that her captain would have been prepared either to refuse assent to her signal of two whistles to allow her to pass ahead, or, upon such assent, to have enabled him to determine better at what distance it was necessary for him to reverse, in order to allow the Sammy to pass safely. The Burke, as I have said, was not by her mere assenting whistles necessarily bound at once to stop and back, unless backing was in fact necessary to avoid collision; but, after having agreed to that mode of passing, she was bound, knowing the intentions of the Sammy, to which she had assented, to stop and back just so soon as the course agreed on made stopping and backing necessary to avoid collision. *The Columbia*, 25 Fed. Rep. 844; *The Aurania*, 29 Fed. Rep. 124.

Quite a number of witnesses for the Burke have testified that in their judgment the collision would have been avoided if the Sammy had not reversed when her bows had about reached the line of the bark's course, and when only about 50 or 100 feet distant from her. There seems to me very little probability that this contention is correct. Responsibilities for collision are not to be determined by measures like this taken *in extremis*.

For the above reasons both must be held in fault, and the damages divided.